UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 24-1651
(7:23-CV-1673-BO-RN)

_____

ROBERT PAUL SHARPE

    Plaintiff – Appellant

v.

UNITED STATES OF AMERICA

    Defendant – Appellee

---

INFORMAL BRIEF

---

    Robert Sharpe, Appellant, respectfully comes before this Court requesting assistance establishing federal whistleblower rights after protected activity under 41 U.S.C. § 4712 and 31 U.S.C. § 3730(h). VA OIG failed to properly handle whistleblower retaliation claims, attempted a coverup, and continues to deny assistance to this day. Retaliation is ongoing and severe. In desperation and exhausted from years of retaliation, Appellant nearly lost his battle with depression.

1

# FACTS

1. Plaintiff is a federal contractor and worked with the Department of Veterans Affairs (VA).

2. Plaintiff was employed by and held stock in Port City Contracting Services, Inc. (PCCS), a North Carolina registered corporation.

3. Mark Eastham and Peter Spark were officers and equity holders with PCCS.

4. The VA SDVOSB program earmarks billions in annual contracts "set aside" for disabled owned companies. Because this money is intended to go towards supporting disabled veterans, the benefit program is tightly regulated.

5. Plaintiff was required to maintain <u>absolute</u> control of PCCS due to experience and professional licensing held Eastham and Spark, and be the highest compensated person with PCCS.

6. On 12/10/2021, due to concerning behavior and conversations between Spark and Eastham on company platforms, a fraud investigation began. At that time, whistleblower protection attaches under 31 U.S.C. § 3730(h).

2

7. Managing contractors must investigate FCA fraud when reasonable belief exists. In this matter, Eastham and Spark's failure to follow SDVOSB compensation and control requirements created an illegal and fraudulent pass-through entity. Often, called "rent a vet", thse schemes are prosecuted under 31 U.S.C. § 3729 of the False Claims Act (FCA).

8. On 12/14/2021, Eastham and Spark were terminated as employees with PCCS, *inter alia*, for fraud. Instead of "renting" disabled veteran status for illegal profit, Appellant was exploited financially and mentally abused as part of their fraudulent scheme to exploit SDVOSB contracts, ultimately stealing from taxpayers.

9. Further investigation validated concerns, including:

    a) W-2 forms and financial records intentionally hidden from Plaintiff. Compensation violations.

    b) Discussions about theft of company assets and work product. Control Violations

    c) Threats against the safety of Appellant and family.

    d) Completion of illegal and fraudulent acts in a federally funded program and intent to continue.

10. On 12/20/2021, a police report was filed concerning theft, embezzlement, and federal contracting fraud by Spark and Eastham. At that time whistleblower protection under 41 U.S.C. § 4712 attaches.

11. On 02/04/2022, following threats to bankrupt, harm, and retaliate against Appellant, a 50c protective order was obtained at hearing (New Hanover County District Court) with Spark and his counsel present.

12. In January of 2022, a new fraud, initially unrelated to Spark and Eastham, was discovered while PCCS was subcontracting work on VA RFQ #36C77022Q0076.

13. Appellant became concerned about federal contracting fraud after conversations with Daniel Shoaf, CEO of Davinci Aerospace, The Davinci Company, et al. (DVC). Specifically, concerns related to violations of the False Claims Act, 31 U.S.C. § 3729. When bidding, Shoaf misrepresented <u>re-packaged medical items</u> as new OEM supplies, creating an immediate danger to patient health.

14. Instead of a *qui tam* action, Appellant believed ethics required immediate action. Accordingly, on January 18th, 2022, Plaintiff

made a protected whistleblower report to Rick Lemmon and VA National Contracting Office 15 (NCO15). *See.* Ex.1

15. NCO15 informed Appellant the contract was terminated due to the issues reported.

16. After protected disclosures, Shoaf began a retaliatory scheme with Eastham and Spark; multiple abusive lawsuits have been filed in multiple jurisdictions.

17. Plaintiff submitted whistleblower retaliation report #2022-30020 to VA OIG in July 2022.

18. On 08/09/2022, VA OIG denied requests for help, incorrectly stating they did not assist whistleblowers, closing the complaint. Repeated requests for help were denied negligently stating VA OIG did not help whistleblowers.

19. After a congressional inquiry, In April 2023, VA OIG changed reasoning for denying assistance, now claiming Appellant was "not a contractor".

20. After the filing of the APA action, VA OIG again changed excuses. Now, counsel for VA OIG states Appellant did not properly report retaliation, contractor retaliation investigation are discretionary,

5

and that an investigation never took place. This claim contradicts statements and emails obtained by general counsel for the Senate VA committee.

21. After a whistleblower retaliation report:

> the Inspector General shall investigate the complaint and upon completion of such investigation, submit a report of the findings of the investigation to the person, the contractor, subcontractor, grantee, subgrantee, or personal services contractor concerned, and the head of the agency. *See.* 41 U.S.C. § 4712

22. Whistleblower protections have been improperly denied, withheld after retaliation reports were received by VA OIG; retaliation is ongoing and severe.

## ISSUES

**1.  What is considered a proper retaliation report under 41 U.S.C. § 4712; when is an investigation mandatory?**

OIG was repeatedly furnished with evidence of protected activities and retaliation. If VA OIG is allowed to use exclusions in bad faith after years of different excuses, protections under § 4712 are meaningless. According to the current VA OIG website:

> Whistleblowers perform an important service for the public, veterans, and VA when they report evidence of wrongdoing. All VA employees,

6

contractors, subcontractors, grantees, subgrantees, and personal services contractors are protected from retaliation for making a protected disclosure.

VA OIG refuses to uphold required duties. VA OIG argues an alternative remedy exists where Appellant fights pro se battles in a complicated set of federal and state courts, versus protection and mandatory relief. Appellant went from high income and a successful SDVOSB – to bankruptcy and harassing litigation while suicidal, unable to obtain PTSD treatment. If OIG had properly investigated and reported, mandatory remedies could have been obtained without Appellant nearly dying or going bankrupt.

**2.     What actions are required by OIG when receiving reports of retaliation? Accordingly, If OIG fails to take required action, what is the proper remedy?**

Appellant believes the APA action was proper procedure to address VA OIG refusing mandatory functions. However, Appellant also understands the reasoning of the district court when stating oversight should come from circuit courts under § 4712. Clarification would help future federal contractors battling retaliation.

**3.     Should Appellant be allowed to amend complaint and include a FTCA claim?**

7

Appellant unintentionally missed the local rule to attach a copy of the amended complaint. At the time, Appellant had not found medication to help with his spiraling OCD and depression. Due to the actions of the bankruptcy court, retaliation has become worse. At times, Appellant almost gave up.

VA OIG negligently believed for a year they didn't help whistleblowers, failing to properly train OIG staff as required under 38 U.S.C. § 733(a)(5). The VA certified for years staff was properly trained, when they obviously were not. Importantly, § 733 isn't quoted as grounds for an FTCA claim, but to show VA OIG negligence on multiple levels.

Appellant made a good faith effort to notify the district court and preserve claims. When first filed, Appellant naively believed the AUSA would follow words spoken by DOJ IG Horowitz and help.

<u>VA Accountability</u>

VA OIG hid this matter while whistleblower hearings were before Congress, making statements in one manner on camera, then fighting whistleblowers in practice. VA OIG knew the truth, yet preferred to hide mistakes, even if Appellant took his own life to escape abuse.

8

Veterans are dying at alarming rates. If veterans needing help can't trust VA OIG, then whom?

Appellant hopes the FTCA matter will be allowed to proceed. Appellant's success or failure here will affect other disabled veterans and whistleblowers trying to escape abuse, often in bankruptcy. Appellant worries his unintentional mistakes will harm people needing help in the future. To show good faith, Appellant will donate 100% of his FTCA recovery to Wounded Warriors, Special Forces Charitable Trust, Veterans Resiliency Project at UNCW/Marshall University.

Although these issues are a public concern; Appellant is unable to afford counsel for complex litigation. Although I will continue advocating, these issues deserve more than I can provide pro se.

Without holding the VA accountable, nothing will change. Retaliation has recently increased. As this brief is being written, DVC and Shoaf are seeking sanctions in bankruptcy court, retaliation for speaking the truth and seeking help.

## **SUMMARY**

Appellant made good faith efforts to obtain whistleblower protections and preserve claims. Failure to bring an amended claim was

9

due in part to unreasonable objections made by the DOJ when requesting permission to amend. Arguments by the AUSA are contrary to statements by DOJ IG Horowitz to Congress:

> As DOJ inspector general and as chair of the Council of the Inspectors General on Integrity and Efficiency, or CIGIE, one of my highest priorities has been to educate Federal employees about the importance of whistleblowing and to ensure that those who blow the whistle are protected from retaliation or even the threat of retaliation…

Appellant is still waiting for protection. If VA OIG had properly responded, retaliation could have been stopped long ago. I worry every day for what comes next. I did my mandatory duty and reported; I need VA OIG to do theirs.

## **RELIEF**

Appellant respectfully ask this Court to allow an amended claim under the FTCA; and allow review of OIG actions under the APA or alternatively, before this Court under 41 U.S.C. § 4712.

Respectfully submitted this 2nd day of August 2024,

/s/ Robert Sharpe
Robert Sharpe
245 Royal Fern Rd
Wilmington NC 28412
wilmingtondiver@gmail.com

10

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because the portion of the petition subject to that rule is 1,529 words and therefore does not exceed the 7,800-word limit.

2. This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point Century Schoolbook typeface using Microsoft Word.

Respectfully submitted this 2nd day of August 2024,

/s/ Robert Paul Sharpe

Robert Sharpe
245 Royal Fern Road
Wilmington, NC 28412
(910) 540-8157
wilmingtondiver@gmail.com

## **CERTIFICATE OF CERVICE**

  I hereby certify that I have this day electronically filed the foregoing INFORMAL BRIEF, which will send notification of such filing to all CM/ECF participants in this case.

         Respectfully submitted this 2nd day of August 2024,

            /s/ Robert Sharpe

            Robert Paul Sharpe
            245 Royal Fern Rd
            Wilmington NC 28412
            wilmingtondiver@gmail.com